IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| RONALD ANTHONY PERRY,   ) | |
|     Plaintiff,   ) | Case No. 7:23-cv-00089 |
| ) | |
| v.   ) | |
| ) | By: Michael F. Urbanski |
| OFFICER LILLY, et al.,[1]   ) | Chief United States District Judge |
|     Defendants.   ) | |

## MEMORANDUM OPINION

Ronald Anthony Perry, an inmate proceeding pro se, filed this civil action under 42 U.S.C. § 1983 against four individuals employed at the New River Valley Regional Jail: Officer Lilly, Officer Bettinger, Major O'Dell, and Lisa Ferguson. The defendants have moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the motions to dismiss, ECF Nos. 28 and 33, are **GRANTED IN PART AND DENIED PART**.

## Background

Perry's claims arise from events that occurred at the New River Valley Regional Jail ("NRVRJ") in January 2022, shortly after his arrest. Compl., ECF No. 1, at 4. According to the complaint, Perry was arrested on January 5, 2022, and placed in quarantine at the NRVRJ. Id. When Officer Lilly entered his pod six days later, on January 11, 2022, Perry told the officer that he needed to contact his attorney because he was scheduled to appear in court the following week. Id. He had already submitted a written request to call his attorney to which

---

[1] The Clerk is directed to update the docket to reflect the correct spelling of this defendant's last name.

he had received no response. Id. Perry alleges that Officer Lilly refused to allow him to make any telephone calls and told him to "shut up and stop b****ing." Id. Perry responded with "f*** you" and told Officer Lilly to "get [him] a superior." Id.

Officer Lilly subsequently left the pod and returned with Officer Bettinger. Id. The officers then entered Perry's cell and directed him to put his hands behind his back. Id. When Perry told the officers that he wanted to speak to a supervisor first, they slammed him on the ground, twisted his arms behind his back, and began to punch him in his face, side, and back. Id. The officers then cuffed Perry and started to "drag walk" him toward the steps while yanking his arms up behind his back. Id. When Perry told the officers that something was wrong with his back and that he could not walk, they ignored his complaints and continued to "drag walk" him while he was "screaming" in pain. Id.

The officers subsequently removed the cuffs and threw Perry in another cell. Id. at 6. Perry alleges that he "kept screaming" that he needed help for his back and that he could not move. Id. Approximately ten minutes later, "they brought [Perry] a mat." Id. Perry laid on the mat and continued to request assistance for an hour and a half before medical personnel arrived with a wheelchair to take him to the medical unit. Id. Perry alleges that his back hurt "so bad [he] could not even sit down in the wheelchair without excruciating pain." Id. After undergoing a back x-ray, Perry was transported to a local hospital, where a CT scan revealed that a disk had "slipped by 6 centimeters." Id. Perry alleges that a doctor at the hospital told him that the back injury could take six to eight weeks to heal and that he may need physical therapy. Id. at 5.

Upon returning to the NRVRJ, Perry asked Ferguson to assist him in documenting his injuries. Id. at 5. Perry alleges that he still had some swelling on his face that he wanted Ferguson to photograph. Id. Ferguson declined to do so, however, because the incident was under investigation by Lt. Miller. Id. Ferguson informed Perry that she could not interfere with the investigation and that Miller would have to request the photographs. Id. Perry alleges that Ferguson also refused to provide him with a "medical release form to be filled out." Id.

Perry further alleges that he submitted "numerous request form[s] asking for grievances" over the next several months and that most of the forms were "never returned to [him] with an answer." Id. at 7. He claims that he was "denied access to a grievance form by Major O'Dell" and other shift commanders. Id. at 8. After Perry was released from the NRVRJ, a grievance form that he submitted was denied because he was no longer housed at the jail. Id. On January 30, 2023, after Perry was arrested and detained at the jail on new charges, he asked Major O'Dell "about [his] request forms for grievances and none of them being returned or even answer[ed]." Id. Perry alleges that O'Dell said that he "didn't get back any of [his] request forms or even an answer to them [be]cause it was all part of an in[-] house investigation and a lawyer would have to subpoena them." Id.

Based on these allegations, Perry filed this action under 42 U.S.C. § 1983 against Officer Lilly, Officer Bettinger, Major O'Dell, and Lisa Ferguson. He seeks monetary damages and unspecified injunctive and declaratory relief. Id. at 10.

## Standard of Review

The defendants have moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient

3

factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff's allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. While a complaint does not need "detailed factual allegations," merely offering "labels and conclusions," "naked assertion[s] devoid of further factual enhancement," or "a formulaic recitation of the elements of a cause of action will not do." Id. (alteration in original) (internal quotation marks omitted) (quoting Twombly, 550 U.S. at 555, 557).

When a complaint is filed by a pro se litigant, it must be construed liberally. King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016). "Principles requiring generous construction of pro se complaints are not, however, without limits." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985). A pro se complaint "must still 'state a claim to relief that is plausible on its face.'" Sakyi v. Nationstar Mortg., LLC, 770 F. App'x 113, 113 (4th Cir 2019) (quoting Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014)).

## Discussion

Perry seeks relief under 42 U.S.C. § 1983 for alleged violations of his constitutional rights. "To state a claim under § 1983, a plaintiff must allege that he was deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." Thomas v. Salvation Army S. Terr. 841 F.3d 632, 637 (4th Cir. 2016). Additionally, because vicarious liability is inapplicable to § 1983 actions, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, . . . violated the Constitution." Iqbal, 556 U.S. at 676.

### I. Claims against Officer Lilly and Officer Bettinger

Based on Perry's allegations, the court agrees with the defendants that the complaint is properly construed as asserting claims of excessive force and deliberate indifference against Officer Lilly and Officer Bettinger. Although the defendants analyze these claims under the Eighth Amendment, the complaint indicates that Perry was a pretrial detainee at the time of the underlying events. See Compl. at 4 (alleging that the use of force occurred six days after Perry was arrested and that he was scheduled to appear in court the following week). Consequently, "the Fourteenth Amendment, and not the Eighth Amendment, governs his claim[s]" against Lilly and Bettinger. Mays v. Sprinkle, 992 F.3d 295, 300 (4th Cir. 2021).

#### A. Excessive Force

The Due Process Clause of the Fourteenth Amendment protects pretrial detainees from the use of force that amounts to punishment. Graham v. Connor, 490 U.S. 386, 395 n.10 (1989) (citing Bell v. Wolfish, 441 U.S. 520, 535–39 (1979)). To prevail on a claim of excessive force, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." Kingsley v. Hendrickson, 576 U.S. 389, 396–97 (2015). This standard "turns on the facts and circumstances of each case," and various factors, including the following, "may bear on the reasonableness or unreasonableness of the force used":

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

5

Id. at 397 (internal quotation marks and citations omitted). Because the applicable standard is objective, a "defendant's state of mind is not a matter that a plaintiff is required to prove." Id. at 395. Nonetheless, a pretrial detainee can also prevail by showing that a defendant's actions were taken with an intent to punish. Kingsley, 576 U.S. at 398 (citing Bell, 441 U.S. at 538); see also id. at 400 (emphasizing that "pretrial detainees (unlike convicted prisoners) cannot be punished at all, much less maliciously and sadistically") (internal quotation marks and citation omitted).

Here, Perry alleges that the use of force occurred after a verbal exchange with Lilly, during which Perry asked to call his attorney, Lilly told him to "shut up and stop b****ing," and Perry responded with "f*** you" and asked to see a supervisor. Compl. at 4. Following this exchange, Lilly left the pod and returned with Bettinger. When Perry again requested to speak to a supervisor upon being told to put his hands behind his back, Lilly and Bettinger allegedly slammed him to the ground; twisted his arms behind his back; and punched him in his face, side, and back, causing pain and injury. Id. Viewing the allegations in the light most favorable to Perry, the court concludes that the complaint plausibly alleges that the force purposely used by the officers was objectively unreasonable and amounted to punishment for offensive language or insubordination. See, e.g., Sawyer v. Asbury, 537 F. App'x 283, 294–95 (4th Cir. 2013) (concluding that a deputy used excessive force against a detainee when he struck him in the head "in response to mere insulting words and noncompliance with the deputy's orders," and noting that "[a] detainee's refusal to comply with an officer's lawful order, without more, is not a license to 'take the gloves off'"); Jones v. Buchanan, 325 F.3d 520, 530 (4th Cir. 2003) (emphasizing that the "mere use of foul language, even a drunk's loud

use of such language in a police station, does not justify an objectively reasonable police officer knocking the drunk down, jumping on him, and breaking his nose"). Accordingly, the complaint states a viable claim of excessive force against Lilly and Bettinger.

### B. Deliberate Indifference

Liberally construed, the complaint also alleges that Lilly and Bettinger exhibited deliberate indifference to his serious medical needs arising from the use of force. Perry asserts that he suffered a back injury as a result of the officers' actions, that he told the officers that he could not walk because something was wrong with his back, and that they nonetheless proceeded to "drag walk" him while he was screaming in pain. Compl. at 4. Perry further alleges that the officers "thr[ew]" him in another cell at the jail, where he screamed in pain and begged for help for an hour and a half before being taken to the medical unit. He was subsequently transported to the hospital, where he was diagnosed with a slipped disk. Id. at 6.

It is clearly established that a pretrial detainee's "right to be free from any form of punishment under the Due Process Clause of the Fourteenth Amendment . . . require[s] that government officials not be deliberately indifferent to any serious medical needs of the detainee." Mays, 992 F.3d at 301 (internal quotation marks and citation omitted). Although "the precise scope of this Fourteenth Amendment right remains unclear[,] . . . a pretrial detainee makes out a violation at least where [the detainee] shows deliberate indifference to serious medical needs under cases interpreting the Eighth Amendment." Id. (internal quotation marks and citations omitted).

"The test for deliberate indifference is two-pronged and includes both objective and subjective elements." Stevens v. Holler, 68 F.4th 921, 931 (4th Cir. 2023). The plaintiff must

show that he had a serious medical need, which is an objective inquiry, and that a defendant acted with deliberate indifference to that need, which is a subjective inquiry. Heyer v. United States Bureau of Prisons, 849 F.3d 202, 209–10 (4th Cir. 2017). A medical need is sufficiently serious for purposes of the objective component "when it has been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Gordon v. Schilling, 937 F.3d 348, 356 (4th Cir. 2019).

The subjective component requires an inmate to show that a defendant acted with deliberate indifference to a serious medical need. Deliberate indifference is "a higher standard for culpability than mere negligence or even civil recklessness." Jackson, 775 F.3d at 178. "In the context of a claim related to the denial of medical treatment or a delay in providing such treatment, 'a defendant acts with deliberate indifference if he had actual knowledge of the plaintiff's serious medical needs and related risks, but nevertheless disregarded them.'" Griffin v. Mortier, 837 F. App'x 166, 170 (4th Cir. 2020) (quoting Gordon, 937 F.3d at 357). A plaintiff can satisfy the subjective knowledge requirement through direct evidence of a defendant's actual knowledge or through circumstantial evidence tending to establish such knowledge, including evidence that the defendant knew of a substantial risk from the very fact that the risk was obvious. Gordon, 937 F.3d at 357.

"The necessary showing of deliberate indifference can be manifested by prison officials in responding to a prisoner's medical needs in various ways, including intentionally denying or delaying medical care, or intentionally interfering with prescribed medical care." Formica v. Aylor, 739 F. App'x 745, 754 (4th Cir. 2018) (emphasis omitted) (citing Estelle v. Gamble, 429 U.S. 97, 104–05 (1976)). When a claim of deliberate indifference is predicated on a delay in

8

providing or obtaining medical assistance, the United States Court of Appeals for the Fourth Circuit has "ruled that there is no Eighth Amendment violation unless 'the delay results in some substantial harm to the [plaintiff,]' such as a 'marked' exacerbation of the [plaintiff's] medical condition or 'frequent complaints of severe pain.'" Id. (emphasis omitted) (quoting Webb v. Hamidullah, 281 F. App'x 159, 166–67 (4th Cir. 2008)).

In moving to dismiss the claim of deliberate indifference against Lilly and Bettinger, the defendants do not challenge whether Perry's alleged back injury was sufficiently serious to satisfy the objective component. Instead, they assert that the allegations in the complaint are insufficient to establish the subjective component of deliberate indifference. In particular, the defendants emphasize that the complaint indicates that Perry "received medical attention within two hours," and they argue that there is no indication that "the under-two-hour window exacerbated his medical issue" or that the officers "knew Perry needed faster treatment and disregarded that need." Defs.' Br. Supp. Mot. Dismiss, ECF No. 29, at 8.

Accepting Perry's factual allegations as true and viewing the complaint in the light most favorable to him, the court disagrees with the defendants and concludes that the allegations are sufficient to state a claim of deliberate indifference against Officer Lilly and Officer Bettinger. As indicated above, Perry alleges that he experienced excruciating pain as a result of the officers' actions; that he screamed in pain when they forced him to walk after assaulting him; that he continued to scream in pain and beg for help after they threw him in another cell; and that his cries for help were ignored for an hour and a half. While Officer Lilly and Officer Bettinger may be able to refute these allegations on summary judgment, they are sufficient to withstand dismissal under Rule 12(b)(6). See Krell v. Braightmeyer, 828 F. App'x 155, 159 (4th

9

Cir. 2020) (rejecting the defendants' argument that "mere complaints of pain [following the use of force] were insufficient to establish a constitutional violation" and holding that evidence that officers failed to provide medical care for the detainee's severe pain was "enough to prevail on a claim of deliberate indifference"); Lewis v. McLean, 864 F.3d 556, 564 (7th Cir. 2017) (noting that "even brief, unexplained delays in treatment may constitute deliberate indifference" and concluding that a jury could reasonably find that the defendants "exhibited deliberate indifference by delaying [an inmate's] treatment [for severe back pain] for approximately one and a half hours," thus causing "unnecessary suffering").

### C. Qualified Immunity

Having determined that the complaint states plausible claims of excessive force and deliberate indifference against Lilly and Bettinger, the court must address the defendants' argument that the officers are entitled to qualified immunity. The doctrine of qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In determining whether a government official is protected by qualified immunity, the court considers (1) whether the plaintiff has plausibly alleged a violation of a statutory or constitutional right, and (2) whether the right was clearly established at the time of the conduct in question. See Pearson v. Callahan, 555 U.S. 223, 227 (2009).

For the reasons explained above, Perry has alleged facts sufficient to show that Lilly and Bettinger violated his Fourteenth Amendment rights by using excessive force against him and by exhibiting deliberate indifference to his serious medical needs. Thus, the court must

10

decide whether the constitutional rights at issue were clearly established. A right is clearly established if it is "sufficiently clear 'that every reasonable official would [have understood] that what he is doing violates that right.'" Reichle v. Howards, 566 U.S. 658, 664 (2012) (alteration in the original) (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011)).

At the time of the events in question, the Supreme Court had long recognized that "the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment." Graham, 490 U.S. at 395 n.10. The Court had also made clear that "pretrial detainees . . . cannot be punished at all, much less maliciously and sadistically," and that the use of objectively unreasonable force against a pretrial detainee violates the detainee's Fourteenth Amendment rights. Kingsley, 576 U.S. at 396 –97, 400. Because Perry has alleged facts from the court can reasonably infer that the officers' use of force was objectively unreasonable and amounted to punishment, qualified immunity does not bar his Fourteenth Amendment claim of excessive force at this stage of the litigation. See Sawyer, 537 F. App'x at 297 (concluding that "[i]t was clearly established in October 2009 that 'words alone do not justify the excessive use of force against a pretrial detainee'") (quoting United States v. Cobb, 905 F.2d 784, 789 (4th Cir. 1990)); Orem v. Rephann, 523 F.3d 442, 449 (4th Cir. 2008) (emphasizing that the use of force to punish or intimidate a detainee is "a use that is not objectively reasonable, is contrary to clearly established law, and is not protected by qualified immunity").

The court reaches the same decision with respect to the claim of deliberate indifference. Long before the events giving rise to this action, "it was clearly established that a pretrial detainee had a right to 'at least the same protection under the Fourteenth Amendment as are

11

convicted prisoners under the Eighth Amendment,' and that 'deliberate indifference to the serious medical needs of a pretrial detainee violates the due process clause.'" Tarashuk v. Givens, 53 F. 4th 154, 165–66 (4th Cir. 2022) (quoting Young v. City of Mount Ranier, 238 F.3d 567, 575 (4th Cir. 2001)). It was also clearly established that "[a] delay in the provision of medical treatment for painful conditions—even non-life-threatening conditions—can support a deliberate-indifference claim, so long as the medical condition is sufficiently serious or painful." Grieveson v. Anderson, 538 F.3d 763, 799 (7th Cir. 2008) (citations omitted); see also Krell, 828 F. App'x at 159 (holding that "the requirement that Defendants provide treatment for Krell's pain was clearly established at the time of the incident"); Lewis, 864 F.3d at 656 (concluding that the defendants were not entitled to qualified immunity on the claim that they exhibited deliberate indifference by delaying treatment for the prisoner's severe back pain for approximately one and a half hours). Accordingly, the court concludes that Lilly and Bettinger are not entitled to qualified immunity at this stage of the litigation. The defendants' motions to dismiss will be denied with respect to the claims for damages asserted against these officers.[2]

## II. Claims against Major O'Dell and Lisa Ferguson

Perry does not allege that Major O'Dell or Lisa Ferguson played a role in the use of force against him on January 11, 2022, or the subsequent delay in providing medical treatment for his back pain. Instead, Perry claims that O'Dell denied him access to grievance forms after

---

[2] Although qualified immunity is not a defense against claims for equitable relief, Wall v. Wade, 741 F.3d 492, 498 n.9 (4th Cir. 2014), Perry does not specify what injunctive or declaratory relief he is seeking in this action. Moreover, the record reflects that Perry is no longer detained at the NRVRJ, rendering moot any claims for declaratory and injunctive relief against the officers employed at that facility. See Rendelman v. Rouse, 569 F.3d 182, 186 (4th Cir. 2009) ("[A]s a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief with respect to his incarceration there.").

he returned from the hospital and that Ferguson refused to photograph his face or provide a medical release form.

The court agrees with the defendants that the allegations against O'Dell and Ferguson fail to state a constitutional claim. Under existing precedent, "inmates have no constitutional entitlement or due process interest in access to a grievance procedure." Booker v. S.C. Dep't of Corr., 855 F.3d 533, 541 (4th Cir. 2017). Consequently, an inmate "cannot bring a § 1983 claim alleging denial of a specific grievance process." Id. Thus, the alleged denial of access to grievance forms is not actionable under § 1983.

To the extent that the complaint can be construed to suggest that O'Dell and Ferguson interfered with his ability to pursue criminal charges or a civil lawsuit, the allegations fare no better. The Fourth Circuit has made clear that "[n]o citizen has an enforceable right to institute a criminal prosecution," Lopez v. Robinson, 914 F.2d 486, 494 (4th Cir. 1990), and Perry does not allege that he suffered any "actual injury" as result of the denial of access to photographs or a medical release form. Lewis v. Casey, 518 U.S. 343, 351 (1996); see also Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996) (emphasizing that a prisoner must "identify an actual injury" resulting from the denial of access to the courts). Thus, the complaint fails to state a viable constitutional claim against O'Dell and Ferguson.

## Conclusion

For the reasons set forth herein, the defendants' motions to dismiss, ECF Nos. 28 and 33, are **GRANTED IN PART AND DENIED IN PART**. An appropriate order will be entered.

Entered: November 6, 2023

Digitally signed by Michael F. Urbanski Chief U.S. District Judge
Date: 2023.11.06 15:28:54 -05'00'

Michael F. Urbanski
Chief United States District Judge

14