CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED
September 22, 2026
LAURA A. AUSTIN, CLERK
BY: /s/ M. Poff
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | | |
|---|---|---|
| **RONALD ANTHONY PERRY,** | ) | |
| **Plaintiff,** | ) | **Case No. 7:23-cv-00089** |
| | ) | |
| **v.** | ) | |
| | ) | **By: Michael F. Urbanski** |
| **OFFICER LILLY, et al.,** | ) | **Senior United States District Judge** |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

Ronald Anthony Perry, an inmate proceeding pro se, filed this civil action under 42 U.S.C. § 1983. Perry claims that the remaining defendants, Officer Jacob Lilly and Officer Thomas Bettinger, used excessive force against him at the New River Valley Regional Jail ("NRVRJ") and acted with deliberate indifference to his serious medical needs. Officer Lilly and Officer Bettinger have filed a motion for summary judgment to which Perry has responded. For the reasons set forth below, the motion for summary judgment, ECF No. 46, is **GRANTED IN PART AND DENIED IN PART**, and Perry's motion requesting that criminal charges be pursued against Officer Lilly and Officer Bettinger, ECF No. 72, is **DENIED**.

### I. Background

The following summary of the evidence is derived from Perry's verified complaint, Officer Bettinger's declaration, and other exhibits submitted by the parties. See Gowen v. Wingfield, 130 F.4th 162, 175 (4th Cir. 2021) ("A verified complaint 'based on personal knowledge' must be treated as 'the equivalent of an opposing affidavit for summary judgment purposes.'") (quoting Goodman v. Diggs, 986 F.3d 493, 498 (4th Cir. 2021)). The facts are

either undisputed or presented in the light most favorable to Perry, the nonmoving party on summary judgment.

Perry's claims against Officer Lilly and Officer Bettinger arise from events that occurred on January 11, 2022, while Perry was a pretrial detainee at the NRVRJ. Compl., ECF No. 1, at 4; Hamilton Decl., ECF No. 47-2, ¶ 3. Perry had been arrested six days earlier and placed in quarantine at the jail. Compl. at 4.

When Officer Lilly entered Perry's pod on the morning of January 11, 2022, Perry told Lilly that he needed to contact his attorney because he was scheduled to appear in court the following week. Id. Perry had already submitted a written request to call his attorney to which he had received no response. Id. According to Perry, Officer Lilly refused to allow him to make any telephone calls and told him to "shut up and stop b****ing." Id. Perry admittedly responded with "f*** you" and told Officer Lilly to "get [him] a superior." Id.

At approximately 10:00 a.m., Officer Bettinger received a radio message from Officer Lilly requesting assistance. Bettinger Decl., ECF No. 47-3, ¶ 2. When Bettinger entered the pod and approached Perry's cell, he observed Perry shouting and cursing at Officer Lilly. Id. The parties provide different accounts of what transpired next.

**A. Defendants' Account of the Use of Force**

According to the defendants' evidence, Officer Lilly and Officer Bettinger advised Perry that they were going to escort him to the booking area to speak to a supervisor. Although Perry initially refused to comply with their verbal commands, which included ordering him to turn around and place his hands behind his back, he eventually stepped back from the cell

door and turned around. Id. ¶ 2. At that time, the cell door was opened, and Officer Lilly and Officer Bettinger entered the cell and approached Perry to place him in restraints. Id. ¶ 3.

The officers contend that Perry immediately "turned around, took a step back, and got into a fighting stance." Id. "Specifically, Perry balled up both fists and said, 'I'm not f***ing going to Booking.'" Id. At that time, Officer Bettinger took control of Perry's right arm and Officer Lilly took control of his left. According to the officers, Perry "continued resisting [their] efforts which included trying to jerk his body and his arms out of their grasp." Id. As a result, Perry and the officers ended up on the ground, with each defendant on either side of him. Id. ¶ 4.

According to Officer Bettinger's declaration, Perry continued to resist the officers' efforts to place him in handcuffs, and Officer Lilly "unsuccessfully attempted a pressure point submission." Id. Additionally, in an effort to gain compliance, Officer Bettinger "gave Perry a distraction blow to his right side with [the officer's] right hand." Id. Another staff member entered the pod and assisted with handcuffing Perry and lifting him to his feet. The officers maintain that Perry remained hostile and uncooperative while being escorted to a cell in the booking area. Id. ¶¶ 4–6.

While headed toward that area, Perry began complaining of back pain. Id. ¶ 7. After the officers placed Perry in the cell and removed his handcuffs, "Perry said, 'my back. Get me to medical.'" Id. ¶ 8. The officers "then informed [Sergeant] Webb [that] Perry needed to be seen by NRVRJ medical personnel" and returned to their assigned posts. Id. ¶ 8.

### B. Perry's Account of the Use of Force

In response to the officers' motion for summary judgment, Perry contends that he was "excessively assaulted while [his] hands were cuffed and [he] already was restrained." Pl.'s Resp. Opp'n, ECF No. 70, at 2. Although the response was not signed under penalty of perjury, Perry's verified complaint includes similar allegations.

According to the verified complaint, which was signed under penalty of perjury, the officers slammed Perry to the ground after he cursed at Officer Lilly and requested to see a supervisor. Compl. at 4. The officers then twisted Perry's arms behind his back and began to punch him in his face, side, and back. Id. After cuffing Perry, the officers started to "drag walk" him toward the steps while yanking his arms up behind his back. Id. Perry contends that he told the officers that something was wrong with his back and that they continued to "drag walk" him as he was "screaming" in pain. Id.

The officers subsequently removed Perry's cuffs and threw him into a cell. Id. at 6. Perry alleges that he "kept screaming" that he needed help for his back and could not move. Id. Approximately ten minutes later, "they brought [Perry] a mat." Id. Perry alleges that he laid on the mat and continued to request assistance for an hour and a half before medical personnel arrived with a wheelchair to take him to the medical department. Id. Perry alleges that his back hurt "so bad [he] could not even sit down in the wheelchair without excruciating pain." Id.

### C. Available Medical Records

A January 11, 2022, medical note authored by a nurse at the NRVRJ indicates that Perry was "seen after use of force" at 10:22 a.m., at which time Perry rated his back pain as a ten out of ten. Defs.' Ex. D, ECF No. 47-4, at 2. The nurse noted that Perry moaned when

he attempted to reposition himself on the mat in the cell and reported that he did not believe that he could get up. Id. The nurse also noted that an x-ray would be obtained and that Perry was given ibuprofen for pain. Id.

Less than two hours later, Perry underwent a spinal x-ray ordered by a nurse practitioner at the NRVRJ. Defs.' Ex. E, ECF No. 47-5. According to the radiology report electronically signed at 12:21 p.m., the x-ray revealed "[m]ild grade 1 anterolisthesis . . . with suggestion of spondylolysis" but "[n]o fracture or dislocation." ECF No. 47-5 at 1.

That same day, Perry was sent to a local emergency room for evaluation. Id. At 7:42 p.m., a nurse noted that Perry had returned from the emergency room with a diagnosis of back pain and that he had been prescribed oxycodone. Defs.' Ex. D at 2. Perry remained in the medical pod for two days before being moved to quarantine. Id. at 1–2.

## II. Procedural History

Based on the events that allegedly occurred on January 11, 2022, Perry filed this civil action under 42 U.S.C. § 1983 against Officer Lilly, Officer Bettinger, and other defendants. The defendants previously moved to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, and that motion was granted in part and denied in part. See Mem. Op. and Order, ECF Nos. 37 and 38. The case was allowed to proceed on Perry's claims of excessive force against Officer Lilly and Officer Bettinger, and his claim of deliberate indifference against Officer Lilly and Officer Bettinger.

Officer Lilly and Officer Bettinger have since moved for summary judgment. The officers argue that no federal constitutional violation occurred and that they are entitled to qualified immunity. Perry has responded to the motion, and it is ripe for disposition.

## III. Standard of Review

Under the Federal Rules of Civil Procedure, a party may move for summary judgment on a claim or defense. Fed. R. Civ. P. 56(a). Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Id. When ruling on a motion for summary judgment, the court "must construe all facts and reasonable inferences in the light most favorable to the nonmoving party." Shaw v. Foreman, 59 F.4th 121, 129 (4th Cir. 2023). The court may not "weigh the evidence or make credibility determinations." Jacobs v. N.C. Admin. Office of the Courts, 780 F.3d 562, 569 (4th Cir. 2015). Instead, the court is tasked with determining "whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

## IV. Discussion

### A. Excessive Force

The Due Process Clause of the Fourteenth Amendment protects pretrial detainees from the use of force that amounts to punishment. Graham v. Connor, 490 U.S. 386, 395 n.10 (1989) (citing Bell v. Wolfish, 441 U.S. 520, 533–39 (1979)). To prevail on a claim of excessive force, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." Kingsley v. Hendrickson, 576 U.S. 389, 396–97 (2015). This standard "turns on the facts and circumstances of each case," and various factors, including the following, "may bear on the reasonableness or unreasonableness of the force used":

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any

> effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

Id. at 397 (internal quotation marks and citations omitted).

Because the applicable standard is objective, a "defendant's state of mind is not a matter that a plaintiff is required to prove." Id. at 395. Nonetheless, a pretrial detainee can also prevail by showing that a defendant's actions were taken with an intent to punish. Id. at 398 (citing Bell, 441 U.S. at 538). This is because "pretrial detainees (unlike convicted prisoners) cannot be punished at all, much less maliciously and sadistically." Id. at 400 (internal quotation marks omitted); see also Russell v. Scott, 170 F.4th 83, 94 n.4 (2d Cir. 2026) ("Force amounting to punishment also can consist of actions taken with an expressed intent to punish. Thus, officer contact with a pretrial detainee violates the Fourteenth Amendment if it is done for the purpose of punishment, even if it was otherwise reasonable under an objective standard.") (internal quotation marks and citations omitted).

Viewing the record in the light most favorable to Perry, the court is unable to conclude that Officer Lilly and Officer Bettinger are entitled to summary judgment on the claims of excessive force asserted against them. According to the verified complaint, the officers slammed Perry to the ground after he cursed at Officer Lilly and repeatedly asked to speak to a supervisor. The verified complaint also indicates that the officers punched Perry in his face, side, and back, after twisting his arms behind his back to apply restraints, and that they then forcefully drag walked him to another cell while pulling his restrained arms behind his back in a painful position, despite his screams of pain. Based on Perry's sworn statements, a reasonable jury could find that the amount of force purposely used against Perry was objectively

unreasonable and amounted to punishment. See, e.g., Sawyer v. Asbury, 537 F. App'x 283, 294–95 (4th Cir. 2013) (concluding that a deputy used excessive force against a detainee when he struck him in the head "in response to mere insulting words and noncompliance with the deputy's orders" and noting that "[a] detainee's refusal to comply with an officer's lawful order, without more, is not a license to 'take the gloves off'"); Orem v. Rephann, 523 F.3d 442, 447 (4th Cir. 2008) (concluding that the use of force against a detainee just after she "forcefully stated 'f*** you'" to an officer could support an inference that force was used not to restore order, but "for the very purpose of harming and embarrassing" the detainee); Allen v. Fields, No. 7:21-cv-00207, 2023 WL 5214120, at *10–11 (W.D. Va. Aug. 14, 2023) (concluding that a reasonable jury could find that an officer used excessive force by aggressively and unnecessarily yanking on an inmate's injured wrist while escorting the inmate in handcuffs to segregation).

The factual disputes created by the parties' conflicting sworn statements also prevent the court from concluding that the officers are entitled to qualified immunity on the claims of excessive force. The doctrine of qualified immunity "protects government officials from liability for civil damages, provided that their conduct does not violate clearly established statutory or constitutional rights within the knowledge of a reasonable person." Danser v. Stansberry, 772 F.3d 340, 345 (4th Cir. 2014) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). When determining whether an official is protected by qualified immunity, the court must determine (1) whether the facts viewed in the plaintiff's favor make out a violation of a constitutional right, and (2) whether the right at issue was clearly established at the time of the

incident. See Stanton v. Elliott, 25 F.4th 227, 233 (4th Cir. 2022) (citing Pearson v. Callahan, 555 U.S. 223, 231 (2009)).

In this case, the court has already determined that the evidence presented by Perry, when viewed in his favor, is sufficient to withstand summary judgment on his claims of excessive force in violation of the Fourteenth Amendment. Thus, the court must decide whether the constitutional right at issue was clearly established. A right is clearly established if it is "sufficiently clear 'that every reasonable official would have understood that what he is doing violates that right.'" Reichle v. Howards, 566 U.S. 658, 664 (2012) (brackets omitted) (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011)). In the Fourth Circuit, "[d]efendants bear the burden of proving that the unlawfulness of their conduct was not clearly established." Garrett v. Clarke, 74 F.4th 579, 584 (4th Cir. 2023) (citing Stanton, 25 F.4th at 233 & n.5). The officers have not met their burden at this stage of the proceedings.

At the time of the events in question, the Supreme Court had long recognized that "the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment." Graham, 490 U.S. at 395 n.10. The Court had also made clear that "pretrial detainees . . . cannot be punished at all, much less maliciously and sadistically," and that the use of objectively unreasonable force against a pretrial detainee violates the detainee's Fourteenth Amendment rights. Kingsley, 576 U.S. at 396–97, 400. Because Perry's sworn account of his encounter with Officer Lilly and Officer Bettinger, when viewed in his favor, would allow a reasonable jury to find that the officers' use of force was objectively unreasonable or a form of punishment, qualified immunity does not bar the claims of excessive force at this stage of the litigation. See Sawyer, 537 F. App'x at 297 (concluding that "[i]t was

clearly established in October 2009 that 'words alone do not justify the excessive use of force against a pretrial detainee'") (quoting United States v. Cobb, 905 F.2d 784, 789 (4th Cir. 1990)); Orem, 523 F.3d at 449 (emphasizing that the use of physical force to punish or intimidate a detainee is "a use that is not objectively reasonable, is contrary to clearly established law, and not protected by qualified immunity").

For these reasons, the officers' motion for summary judgment will be denied with respect to the claims of excessive force in violation of the Fourteenth Amendment.

**B. Deliberate Indifference**

Perry also claims that Officer Lilly and Officer Bettinger acted with deliberate indifference to his serious medical needs arising from the use of force. Perry alleges that he told the officers that something was wrong with his back as they drag walked him to the booking area, that he "kept screaming" about his back after being thrown in a cell, and that he "ask[ed] for help for an hour and a half before someone from medical came with a wheelchair to take [him] to medical." Compl. at 6.

Under the Due Process Clause of the Fourteenth Amendment, pretrial detainees have the "right to receive adequate medical care and to be free from deliberate indifference to their known medical needs." Rhoads v. Riddell, 180 F.4th 171, 180 (4th Cir. 2026). As [the United States Court of Appeals for the Fourth Circuit has] frequently explained, 'no legitimate nonpunitive goal is served by a denial or unreasonable delay in providing medical treatment where the need for such treatment is apparent.'" Swink v. Southern Health Partners, Inc., 160 F.4th 438, 451–52 (4th Cir. 2025) (quoting Short v. Hartman, 87 F.4th 593, 606 (4th Cir. 2023)).

A claim of deliberate indifference under the Fourteenth Amendment is governed by the two-step test articulated in Short v. Hartman, which was decided shortly after Perry initially filed this action. See Swink, 160 F.4th at 451 ("While the district court did not have the benefit of this Court's decision in Short, Short now governs our analysis here."). The first step requires a plaintiff to show that he had an "objectively serious medical condition." Short, 87 F.4th at 612 (internal quotation marks omitted). "A condition is objectively serious if it is 'diagnosed by a physician as mandating treatment' or is 'so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Id. (quoting Scinto v. Stansberry, 841 F.3d 219, 225 (4th Cir. 2016)). The second step "requires that the plaintiff show 'that the defendant acted or failed to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" Swink, 160 F.4th at 451 (quoting Short, 87 F.4th at 611). In other words, a plaintiff must show that the officers should have known of the plaintiff's serious medical condition and the risk that their actions or failure to act would result in harm, and acted accordingly. Short, 87 F.4th at 611.

Here, the first step of the Short test has been met. It is undisputed that Perry's back pain was sufficiently serious to warrant an x-ray, a trip to the emergency room, and prescription pain medication. See Lewis v. McLean, 864 F.3d 556, 563 (7th Cir. 2017) ("We assume given the excruciating pain that Lewis described being in as well as the ultimate diagnosis of a muscle spasm treated with Morphine that Lewis has established that he had a serious medical condition."). However, to the extent Perry seeks to hold Officer Lilly and Officer Bettinger liable under the Fourteenth Amendment for the delay in receiving such treatment, the officers are entitled to summary judgment.

The officers' evidence, which has not been refuted, indicates that, upon locking Perry in a cell in the booking area, they informed their supervisor that Perry needed to be seen by NRVRJ medical personnel. Perry's medical records from the jail indicate that a nurse saw Perry in the cell approximately twenty minutes after the use-of-force incident and that the nurse gave him ibuprofen and requested an x-ray. As the Fourth Circuit recently noted, "[n]on-medical officers are generally entitled to rely on the expertise of medical staff." Rhoads, 180 F.4th at 182 (emphasis omitted). While the ability to rely on medical personnel is "not without limit," id., there is no evidence that Officer Lilly or Officer Bettinger had any subsequent interactions with Perry or otherwise knew or should have known that he was not receiving timely and adequate medical attention for his complaints of back pain. Thus, even assuming that Perry continued to experience excruciating pain for an hour and a half before being transported to the medical department, no reasonable jury could find that Officer Lilly or Officer Bettinger was personally responsible for the delay. For these reasons, the officers are entitled to summary judgment on the claim of deliberate indifference stemming from the delay in treating Perry's complaints of back pain.

**C. Request to Pursue Criminal Charges**

On May 14, 2026, Perry submitted a handwritten pleading that was docketed as a "motion to pursue charges" against Officer Bettinger and Officer Lilly. ECF No. 72. This motion must be denied. It is well settled that federal courts have no authority to order a criminal investigation or prosecution. See, e.g., United States v. Nixon, 418 U.S. 683, 693 (1974) noting that "the Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case"). Likewise, a private citizen has no "judicially cognizable

interest in the prosecution or nonprosecution of another." Linda R. S. v. Richard D., 410 U.S. 614, 619 (1973).

## V. Conclusion

For the reasons stated, the motion for summary judgment filed by Officer Lilly and Officer Bettinger, ECF No. 46, is **GRANTED IN PART AND DENIED IN PART**, and Perry's motion seeking to pursue criminal charges against the officers, ECF No. 72, is **DENIED**. An appropriate order will be entered.

Entered: September 22, 2026

Michael F.
Urbanski
U.S. District Judge
2026.09.22
12:19:07 -04'00'

Michael F. Urbanski
Senior United States District Judge